IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Case No. 09-cv-02226-PAB-BNB

LETICIA GARZA,

    Plaintiff,

v.

DILLON COMPANIES, INC.,
d/b/a King Soopers, Inc.,

    Defendant.

_____

**ORDER**
_____

This matter is before the Court on the motion for summary judgment [Docket No. 38] filed by defendant Dillon Companies, Inc., doing business as King Soopers, Inc. ("King Soopers"). The motion is fully briefed and ripe for disposition. The Court's jurisdiction over this case is premised upon plaintiff's invocation of federal questions pursuant to 28 U.S.C. § 1331.

**I. BACKGROUND**

Unless otherwise indicated, the following facts are not in dispute. Plaintiff has worked in King Soopers grocery stores since December 22, 1987. On November 1, 1992, she took a position as a Store Administrative Assistant ("SAA") and, on August 3, 2003, transferred to defendant's Store 19 to work as an SAA. At Store 19, plaintiff reported to the store manager, Anne Pierce, and the assistant store manager, Charlotte Villanueva.

On March 31, 2005, David Savage, a vice president with defendant, sent an

email to district managers working for him with the subject line "Cherokee Wisdom from a Savage."  The text of the email described a conversation between an "Old Cherokee Indian" and his grandson regarding choosing good over evil.  The manager of the district in which plaintiff worked, Lisa Chenney, forwarded the email to store managers in her district, including Anne Pierce.  Ms. Pierce then forwarded the email to a group of people, including plaintiff.

On April 6, 2005, plaintiff emailed Ms. Pierce regarding Mr. Savage's email.  Plaintiff expressed that she found the email offensive because the subject line referred to Native Americans as "savages."  Docket No. 38-10 at 2.[1]  Plaintiff informed Ms. Pierce that there was "[n]o need to respond."  Docket No. 38-10 at 2.  Plaintiff contends that Ms. Pierce "reacted adversely and expressed her displeasure with Garza's complaint by stomping her feet to her office . . . and slamming the door."  Docket No. 39 at 5, ¶ 5.  Ms. Pierce informed Ms. Chenney of plaintiff's complaint.  Ms. Chenney referred the issue to Stephanie Bouknight, defendant's Manager of Labor and Employee Relations, who investigated plaintiff's complaint.  During the investigation, plaintiff informed Ms. Bouknight that she was offended by the email because it communicated that Native Americans "only had one good thought."  Docket No. 38-1 at 13 [Garza Depo. at 104, ll. 9-17].

Plaintiff contends that Ms. Pierce began to discipline her in retaliation for her

---

[1] Plaintiff alleges that she also told Ms. Villanueva that she believed the email to be racist.  In support of that contention, plaintiff cites passages from Ms. Villanueva's deposition, but has not filed any deposition transcripts in response to defendant's motion.

complaint regarding the email.[2]  On November 7 and November 23, 2005, plaintiff received written warnings for two separate incidents, one involving plaintiff giving instructions to store security, over whom she had no authority, to watch an employee plaintiff believed was working without properly punching a time clock,[3] and the other relating to comments she made regarding store management at a training session. Then, on February 22, 2006, plaintiff was informed that she would be suspended for one day for allegedly changing her work schedule without authorization.[4]

On November 23, 2006, plaintiff was removed from her position as an SAA for alleged gross negligence.  Defendant contends that plaintiff was grossly negligent in hiring a 70-year old individual to fill a position in the deli department for which he was unable to perform the physical requirements and in hiring an individual convicted of murder to work on the store's night crew.  Plaintiff claims that she informed the applicant for the deli department position of the work requirements and that she "had been instructed not to inquire about an employee's age."  Docket No. 39 at 8, ¶ 16. Plaintiff contends that she did not sign the discipline regarding his hiring because she "opposed this age discrimination . . . ."  Docket No. 39 at 8-9, ¶ 17.  Moreover, plaintiff contends that the applicant for the night crew passed a background check and that Ms. Pierce knew that fact prior to disciplining plaintiff.

---

[2]Ms. Pierce began taking private notes regarding plaintiff's alleged performance problems beginning in August 2005.

[3]Plaintiff also expressed concerns to Ms. Pierce that another employee was also working "off the clock."

[4]Plaintiff contends that she asked Ms. Villanueva to change her schedule.

3

Upon being demoted, defendant placed plaintiff in a General Grocery Clerk position at Store 31, effective November 12, 2006, which required her to work at the customer service desk. On November 17, 2006, plaintiff submitted a letter to Store 31 management from her physician, Dr. J. Tashof Bernton. Dr. Bernton stated that plaintiff's symptoms from Complex Regional Pain Syndrome ("CRPS") – from which plaintiff had suffered since an injury in 1988 – had worsened since plaintiff began her new position at Store 31.[5] Consequently, Dr. Bernton stated that plaintiff was "not able to do the job duties of her current position" in light of her limitations, which were "no continuous standing/walking without the opportunity to change position for more than 15 minutes at a time, and no frequent or continuous repetitive activity for more than 10 minutes at a time, and no lifting over 12 lbs." Docket No. 38-19 at 2. In response, defendant created a new position combining job duties of various other positions in an attempt to accommodate plaintiff's limitations. On December 8, 2006, Dr. Bernton modified the restrictions. With the modified restrictions, plaintiff would be incapable of performing the newly-created position. Plaintiff testified that she thereafter received a call from the assistant store manager, Robert Cortez, informing her that her restrictions could not be accommodated in her current position. As a result, plaintiff began a leave of absence.

Plaintiff filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") on March 21, 2007, claiming that her demotion and

---

[5]Plaintiff contends that she constantly feels pain from the CRPS and, consequently, that she is limited in her ability to care for herself, walk, lift, bend, stand and engage in repetitive activities.

her leave of absence were a consequence of disability discrimination and retaliation for opposing race discrimination in the workplace. Plaintiff admits that her Charge "alleged nothing about her discharge being due to her race or in retaliation for opposing age discrimination in the workplace." Docket No. 38 at 7, ¶ 24; Docket No. 39 at 3, ¶ 24.

At the time she filed her Charge, plaintiff was still on a leave of absence. As a General Grocery Clerk at Store 31, plaintiff was subject to a collective bargaining agreement ("CBA") between defendant and the union representing Store 31's employees. The CBA provided that, if an employee was unable to return from medical leave after eighteen months, an additional six months of unpaid medical leave would be provided if the employee submitted medical evidence supporting the need for such an extension. On December 12, 2008, plaintiff had not yet returned to work and was terminated for exceeding the allowable leave under the CBA.[6]

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver,* 36 F.3d 1513, 1517 (10th Cir. 1994); *see also Ross v. The Board of Regents of the University of New Mexico*, 599 F.3d 1114, 1116 (10th Cir. 2010). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir.

---

[6]It is not clear from the record whether plaintiff submitted additional medical evidence in order to receive the additional six months of unpaid medical leave.

2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & County of Denver,* 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997).  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

### III.  DISCUSSION

Plaintiff has filed six claims for relief against defendant: (1) retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; (2) retaliation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; (3) failure to accommodate pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; (4) violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; (5) discrimination on account of race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; and (6) retaliation in violation of Title VII.  Defendant seeks summary judgment on all of plaintiff's claims.  In response to defendant's motion for summary judgment, plaintiff "does not dispute dismissal of her claims pursuant to the FMLA," Docket No. 39 at 1 n.1, but contends that defendant is not entitled to summary judgment on the remaining claims.

**A. Exhaustion of Administrative Remedies**

Defendant contends that plaintiff failed to exhaust her administrative remedies for her Title VII race discrimination claim.[7] The Court agrees. In the Tenth Circuit, "[e]xhaustion of administrative remedies is a 'jurisdictional prerequisite' to suit under Title VII," *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996) (quoting *Sampson v. Civiletti*, 632 F.2d 860, 862 (10th Cir. 1980)); *see DeWalt v. Meredith Corp.*, 288 F. App'x 484, 490 (10th Cir. 2008) (unpublished) ("Failure to exhaust administrative remedies . . . is a jurisdictional bar to suit."). The Court is permitted to exercise jurisdiction over claims falling within "the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (quotation marks and citation omitted).[8] "[B]ecause failure to exhaust administrative remedies is a bar to subject matter jurisdiction, the burden is on the plaintiff as the party seeking federal jurisdiction to show, by competent evidence, that she did exhaust." *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1106 (10th Cir. 2002).

Plaintiff has not identified any evidence of exhaustion. In fact, she admits that her Charge "alleged nothing about her discharge being due to her race . . . ." Docket No. 38 at 7, ¶ 24; Docket No. 39 at 3, ¶ 24. Instead of contending that she did exhaust, plaintiff cites Tenth Circuit authority that the timeliness of exhaustion does not implicate

---

[7]Plaintiff identifies herself as Native American and alleges that she suffered an adverse employment action on account of her race.

[8]In determining whether plaintiff exhausted administrative remedies, the Court "liberally construe[s] charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim." *Jones*, 502 F.3d at 1186.

the Court's jurisdiction.  *See* Docket No. 39 at 10 (citing *DeWalt*, 288 F. App'x at 490-91); *see also* *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1325 (10th Cir. 2002).  Plaintiff fails to explain how this authority applies in this case, where there is no dispute regarding the timeliness of plaintiff's exhaustion.  Rather, the sufficiency of the Charge is the issue.  Because her Charge provides no basis to expect an ensuing investigation would cover alleged race discrimination, plaintiff's Title VII claim of race discrimination remains unexhausted.  Therefore, the Court must dismiss that claim without prejudice for lack of subject matter jurisdiction.[9]

Defendant also contends that plaintiff failed to exhaust her administrative remedies in regard to her ADEA retaliation claim.  Plaintiff offers no response to that argument.  The Court finds, and the plaintiff has admitted, that her Charge "alleged nothing about her discharge being . . . in retaliation for opposing age discrimination in the workplace."  Docket No. 38 at 7, ¶ 24; Docket No. 39 at 3, ¶ 24.  There is nothing to suggest that the scope of the EEOC investigation stemming from her Charge would cover allegations of retaliation in violation of the ADEA.  Consequently, plaintiff's ADEA retaliation claim must also be dismissed without prejudice for lack of subject matter jurisdiction.

---

[9]Plaintiff also argues that defendant's "reliance on *Shikles* [*v. Sprint/United Management Co.*, 426 F.3d 1304 (10th Cir. 2005)] to establish that this Court should dismiss the instant case for failure to exhaust administrative remedies is misplaced." Docket No. 39 at 11.  Plaintiff argues that, unlike the plaintiff in *Shikles*, she cooperated with the EEOC in good faith.  *See id.*  Again, plaintiff does not articulate how that issue is implicated in this case, where there is no argument that she failed to cooperate with the EEOC.  Defendant merely cited *Shikles* as stating that a failure to exhaust administrative remedies in a Title VII action requires dismissal for lack of jurisdiction rather than the entry of summary judgment.  *See Shikles*, 426 F.3d at 1317-18.

### B.  FLSA and Title VII Retaliation

Plaintiff contends that defendant retaliated against her in violation of the FLSA. The FLSA imposes minimum wage and overtime compensation requirements on employers.  *See* 29 U.S.C. §§ 206, 207.  Furthermore, it makes it

> unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee[.]

29 U.S.C. § 215(a)(3).  The Tenth Circuit has "held an employee's unofficial assertion of rights under § 215(a)(3) is also protected activity."  *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1206 (10th Cir. 2004) (citing *Love v. Re/Max of Am., Inc.*, 738 F.2d 383, 387 (10th Cir. 1984)).  "FLSA retaliation claims are analyzed under the familiar three-pronged *McDonnell Douglas* burden-shifting framework."  *Id.* (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208 (10th Cir. 1997)).  To make out a prima facie case of retaliation, plaintiff must demonstrate that "(1) she engaged in protected activity under FLSA, (2) she suffered an adverse employment action contemporaneous with or subsequent to the protected activity, and (3) a causal connection between the protected activity and the adverse employment action."  *Id.* (citing *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997)).

Defendant contends that plaintiff's complaints about employees working "off the clock" were not protected activity pursuant to the FLSA.  Even assuming plaintiff's complaints were protected activity, however, there is no evidence of a causal connection between that activity and any adverse employment action.  On October 27,

9

2005, plaintiff asked store security to observe whether a certain employee was properly punching out. There is also evidence that, sometime before the April 2005 email from Mr. Savage, plaintiff had raised concerns about the accuracy of the time cards of an employee named Char Dowdell, who would ask plaintiff to punch in and out for her. *See* Docket No. 38-11 at 2 (letter from plaintiff to Ms. Bouknight); Docket No. 38 at 4, ¶ 12 (asserting as undisputed that the letter was faxed on May 10, 2005); Docket No. 39 at 3, ¶ 12 (admitting the same). Thereafter, plaintiff received two warnings in November 2005. While she asserts that these warnings "establish[] the causal nexus for her FLSA claim," Docket No. 39 at 18, she does not contend that the warnings themselves "effect[ed] a significant change in the plaintiff's employment status." *Haynes v. Level 3 Commc'ns., LLC*, 456 F.3d 1215, 1224 (10th Cir. 2006). They do not, therefore, constitute adverse employment actions. *See id.*

The first adverse employment action identified by plaintiff after her complaints regarding timekeeping did not occur until late February 2006, when she was informed that she would be suspended for one day. "A causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Haynes*, 456 F.3d at 1228 (quotation marks and citation omitted.). Here, the "four month time lag" between plaintiff's reports regarding timekeeping and her suspension "by itself would not be sufficient to justify an inference of causation." *Connor v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997); citing, *inter alia*, *Richmond*, 120 F.3d at 209 (a "three-month period between the [protected] activity and termination, standing alone,

does not establish a causal connection")); *see Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) ("[A] three-month period, standing alone, is insufficient to establish causation."). Plaintiff identifies no other evidence that would support an inference of retaliation.

Plaintiff also contends that she "repeatedly raised concerns that Dowdell routinely worked off the clock and asked [plaintiff] to clock in and out for her." Docket No. 39 at 18. Plaintiff does not argue, nor is there any evidence,[10] that she continued to raise any of these concerns after the May 10, 2005 letter to Ms. Bouknight. Even assuming she complained as late as October 2005, when she attempted to have security observe whether another employee punched out properly, there is no evidence linking any such complaints with her discipline in late February 2006, her demotion in November 2006, or the commencement of her medical leave in December 2006.

Plaintiff's Title VII retaliation claim also fails. Plaintiff contends that she was retaliated against for complaining about Mr. Savage's email in April 2005. Plaintiff states that Ms. Pierce "expressed her anger with Garza's complaint . . . by stomping her feet and slamming the door to her office" in early April 2005. Docket No. 39 at 17. That reaction is not itself an adverse employment action, although it could be circumstantial evidence in support of retaliatory motive. Plaintiff, however, does not identify anything that occurred during the ensuing months that would further support an inference of retaliatory motive. *Cf. Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996)

---

[10]Plaintiff does not attach the portions of the deposition transcripts she relies on in support of her assertions regarding her reporting of Ms. Dowdell. Therefore, the Court has only considered those portions she cites which happened to be included in the summary judgment record by the defendant.

("[W]e also believe that the phrase 'closely followed' must not be read too restrictively where the pattern of retaliatory conduct begins soon after the filing of the FLSA complaint and only culminates later in actual discharge."). The Court finds that plaintiff has come forward with insufficient evidence of a causal connection between events occurring more than ten months apart.[11]

For the foregoing reasons, the Court finds that defendant is entitled to summary judgment on plaintiff's FLSA and Title VII retaliation claims.

### C. ADA

Plaintiff alleges that defendant failed to reasonably accommodate her disability in violation of the ADA. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In cases such as this, where a plaintiff seeks to establish an ADA violation through circumstantial evidence, the Court applies the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1217 (10th Cir. 2010); *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005). "[P]laintiff must first establish a prima facie case of discrimination, showing a genuine issue of material fact

---

[11] Plaintiff argues that, considering Ms. Pierce's notes about plaintiff's job performance, a jury "could conclude that by early November 2005 Pierce had started trying to build a case for [plaintiff's] termination." Docket No. 39 at 17. Even assuming an adverse employment action could be identified in November 2005, plaintiff has not identified sufficient additional evidence to show a causal connection between the complaint in April 2005 and any such action taken seven months later.

exists on each of three points: '(1) she is a disabled person as defined by the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) her employer discriminated against her because of her disability.'" *Johnson*, 594 F.3d at 1217 (quoting *MacKenzie*, 414 F.3d at 1274); *see Doebele v. Sprint/United Management Co.*, 342 F.3d 1117, 1128 (10th Cir. 2003); *Poindexter v. Atchison, Topeka & Santa Fe Ry.*, 168 F.3d 1228, 1230 (10th Cir. 1999).

The Court finds that plaintiff has failed to show a genuine issue of material fact regarding the first element of a prima facie ADA case. A "disability" for purposes of the ADA consists of "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1). The Tenth Circuit has found that "[t]his definition contains three elements." *Doebele*, 342 F.3d at 1129. "First, the plaintiff must have a recognized impairment; second, the plaintiff must identify one or more appropriate major life activities; and third, the plaintiff must show that the impairment substantially limits one or more of those activities." *Id.* (citation omitted). It is plaintiff's burden to "'articulate with precision the impairment alleged and the major life activity affected by that impairment,'" and "the court is to analyze only those activities identified by the plaintiff." *Id.* (quoting *Poindexter,* 168 F.3d at 1232); *cf. id.* ("Whether the plaintiff has an impairment within the meaning of the ADA is a question of law for the court to decide.") (citations omitted).

Defendant does not dispute that plaintiff suffers from an impairment. As a result

of that impairment, plaintiff contends that she is limited in her ability to care for herself, walk, lift, bend, stand, and engage in repetitive activities.[12] The Court finds that plaintiff has met her burden of identifying major life activities for purposes of the ADA. *See* 42 U.S.C. § 12102(2)(A) (listing non-exclusive examples of major life activities: "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working").[13]

There is, however, no evidence that plaintiff is substantially limited in any of these activities. A substantially limiting impairment "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Manufacturing, Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002).[14]

---

[12]Plaintiff also contends that she is "hypersensitive to cold temperatures." Docket No. 39 at 4, ¶ 3. She attaches no evidence to support that contention and the cited section of her deposition is not otherwise found in the summary judgment record before the Court. Furthermore, she does not argue that this limitation implicates a major life activity. *See* Docket No. 39 at 18-19. Plaintiff also argues that she no longer plays volleyball and has to limit her shopping to those times when she feels well. *See* Docket No. 39 at 4, ¶ 3. She does not, however, contend that these activities themselves constitute major life activities. *See* Docket No. 39 at 18-19. Rather, it appears that these are consequences of her limitations on walking, lifting, bending, standing, and repetitive activities.

[13]As noted above, it is plaintiff's burden to identify the major life activities affected by her impairment, and it is not clear whether she is arguing that the limitation on repetitive tasks is itself a major life activity or implicates one of the other activities she identifies. Nevertheless, as discussed below, she identifies no evidence of substantial limitation in regard to any potential major life activity.

[14]*Toyota Motor* has been superceded by the ADA Amendments Act of 2008 ("ADAAA"), Pub.L. No. 110-325, 122 Stat. 3553. *See Durham v. McDonald's Restaurants of Okla., Inc.*, 325 F. App'x 694, 695 n.2 (10th Cir. 2009) ("not[ing] that other courts consistently have held that the ADAAA does not apply to conduct occurring before its enactment") (citing *EEOC v. Agro Distrib., LLC*, 555 F.3d 462, 469 n. 8 (5th

In the Tenth Circuit, "a plaintiff must show that [s]he is 'unable to perform the activity or is significantly restricted in the ability to perform the major life activity compared to the general population.'" *Velarde v. Associated Regional and University Pathologists*, 61 F. App'x 627, 629 (10th Cir. 2003) (quoting *Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1240 (10th Cir. 2001)). In this case, plaintiff does not argue that her "impairment is . . . so severe that it is 'substantially limiting on its face.'" *Id.* (quoting *Lusk*, 238 F.3d at 1240).[15] Therefore, she "must present 'evidence comparing her . . . restrictions to that of an average person.'" *Velarde*, 61 F. App'x at 629 (quoting *Lusk*, 238 F.3d at 1240).

Plaintiff has failed to present any such evidence.[16] Rather, she testified that she was able to care for herself, including showering and grooming, but that when she is not feeling well she would get some assistance from a niece and sister who are

---

Cir. 2009); *Moran v. Premier Educ. Group, LP*, 599 F. Supp. 2d 263, 271-72 (D. Conn. 2009)); *see Moran*, 599 F. Supp. 2d at 271 (noting that the ADAAA did "not take effect until January 9, 2009").

[15] Dr. Bernton restricted plaintiff from lifting over 12 pounds in his November 17, 2006 letter. *See* Docket No. 38-19 at 2. That restriction, however, was temporary. *See Doebele*, 342 F.3d at 1130 (stating that courts are to consider three factors when determining whether an impairment is substantially limiting: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact or the expected permanent or long term impact of or resulting from the impairment") (citation omitted). By December 8, 2006, the restriction was changed to no lifting over 25 pounds. *See* Docket No. 38-21 at 2. Tenth Circuit "precedents, as well as those of [its] sister circuits, hold that such a restriction is not substantially limiting on its face." *Velarde*, 61 F. App'x at 630 (citing cases).

[16] As an initial matter, plaintiff has submitted absolutely no evidence relevant to her limitations. While she cites to passages from her deposition transcript in support of claimed limitations, she has filed none of those passages. The Court, therefore, has only been able to rely on that evidence cited by plaintiff which could be found in the materials filed by defendant.

beauticians.  *See* Docket No. 38-1 at 26 [Garza Depo. at 178, l. 24 - 179, l. 8].  Plaintiff also cites her testimony that she is able to walk, but must motivate herself to do so and will take breaks to sit.  *See* Docket No. 38-1 at 26 [Garza Depo. at 177, ll. 23-25].[17]  She cites no other evidence regarding the extent of her limitations and, in fact, does not affirmatively argue that she is "substantially" limited in any major life activity.  *See* Docket No. 39 at 18-19.  Plaintiff simply asserts that she is "restricted" and "limited."  Docket No. 39 at 18.  But "[l]imitations on the ability to engage in life activities, such as lifting heavy objects, is part of the human condition, and unless an ADA plaintiff can show that his impairment reduces his capabilities below those of the average person, he is not deemed 'disabled' under the Act."  *Velarde*, 61 F. App'x at 629.

As plaintiff correctly points out, the determination of whether a limitation is substantially limiting is a factual question for the jury.  Docket No. 39 at 18 (citing *Doebele*, 342 F.3d at 1129).  However "in proper circumstances a court may decide this step on a motion for summary judgment."  *Doebele*, 342 F.3d at 1130 n.5.  This is such a circumstance.  Because plaintiff identifies no "evidence comparing h[er] lifting abilities," or abilities caring for herself, walking, bending, standing, or engaging in repetitive activities, "to those of the general populace," defendant is entitled to summary

---

[17]Plaintiff also testified that she is able to exercise, but needs to do a significant amount of stretching in order to do so.  *See* Docket No. 38-1 at 26 [Garza Depo. at 177, ll. 15-19].  She also does "a little bit of yoga," though it "can be very hard on [her]."  Docket No. 38-1 at 26 [Garza Depo. at 177, ll. 21-22].  Furthermore, plaintiff testified that the effects of the CRPS on her ability to function are "transitory" and that, with the assistance of medication, she is able to function.  *See* Docket No. 38-1 at 4 [Garza Depo. at 37, ll. 10-24].  *Cf. Doebele*, 342 F.3d at 1130 (stating that, when assessing whether an impairment is substantially limiting, "[w]e also take into consideration 'any mitigating or corrective measures utilized by the individual, such as medications'") (citation omitted).

16

judgment on her ADA claim. *Velarde*, 61 F. App'x at 630; *see Tone v. Regional Transportation District*, 447 F. Supp. 2d 1187, 1194 (D. Colo. 2006).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's motion for summary judgment [Docket No. 38] is GRANTED. Defendant is entitled to summary judgment on plaintiff's FLSA retaliation claim, ADA failure to accommodate claim, FMLA claim, and Title VII retaliation claim. It is further

**ORDERED** that plaintiff's ADEA retaliation claim and Title VII race discrimination claim are DISMISSED without prejudice for lack of jurisdiction. It is further

**ORDERED** that the trial preparation conference scheduled for August 26, 2011 and jury trial scheduled to begin on September 12, 2011 are VACATED. It is further

**ORDERED** that, in accordance with the foregoing, judgment shall enter in favor of defendant and against plaintiff.

DATED February 28, 2011.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge